## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JESSICA N. MCCALLISTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 14-2568-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.    Background

This case has a particularly tortuous history which the court will briefly summarize here.  Plaintiff applied for DIB and SSI benefits, alleging disability beginning March 19, 2001.  (R. 879, 96).  After exhausting proceedings before the Commissioner, Plaintiff

sought judicial review, and Judge Rogers of this court determined that remand was necessary for the Commissioner properly to consider the findings and opinions of the numerous medical professionals involved in the treatment and evaluation of Plaintiff's condition. (R. 992-93). After remand, the Administrative Law Judge (ALJ) conducted further proceedings and issued another decision. (R. 1018-39). The Appeals Council determined that, among other errors, the ALJ had once again failed to address the medical source opinions adequately, and it remanded for further proceedings. (R. 1040-46). Thereafter, the ALJ conducted further proceedings and issued his third decision finding that Plaintiff has not been disabled within the meaning of the Act from March 19, 2001 through the date of the decision, June 26, 2013. (R. 879-95). Plaintiff sought Appeals Council review of the ALJ's third decision (R. 874-75), but the Council found no reason to assume jurisdiction. (R. 871-73).

Plaintiff now seeks judicial review of the final decision denying benefits. She urges that the ALJ erred in finding that the criteria of Listing 12.04 are not met, in weighing the medical opinion evidence improperly, and in finding that Plaintiff is capable of performing her alleged past relevant work as a housekeeper.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she

3

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court will address each issue in the order in which it was presented in Plaintiff's Brief.

## II.    Listing 12.04

Plaintiff claims that the ALJ erred in failing to find that her condition meets the severity of Listing 12.04 due to her bipolar disorder.  She argues that her condition meets

the Paragraph A criteria, the Paragraph B criteria, and the Paragraph C criteria of that

Listing.  She asserts this is so because (A) she has bipolar disorder manifested by the full

symptomatic picture of both manic and depressive syndromes; because (B) she has

marked difficulties in maintaining concentration, persistence, or pace, and (B &

C) repeated episodes of decompensation, each of extended duration; and because

(C) even a minimal increase in mental demands or change in the environment causes her

to decompensate, and (C) she is unable to function outside a highly supportive living

arrangement.  (Pl. Br. 26-33).

The Commissioner responds that the ALJ properly determined that Plaintiff's

condition does not meet Listing 12.04, and that Plaintiff's argument to the contrary "is

nothing more than an extended request that the Court [sic] reweigh the evidence,

reinterpreting the facts to reach an outcome more favorable to her."  (Comm'r Br. 3).  She

argues that Plaintiff's history of bipolar disorder fails to meet the Paragraph A criteria

because it is without a discussion of either the depressive or manic syndromes; that

Plaintiff's condition fails to meet the Paragraph B criteria because her daily activities

demonstrate that she was no more than moderately impaired in concentration, persistence,

or pace, and because none of her episodes of decompensation lasted two weeks or more

and do not meet the regulatory definition of "extended duration;" and that her condition

fails to meet the Paragraph C criteria because she did not have episodes of

decompensation which were of extended duration, because she has not shown that even a

minimal increase in mental demands or change in the environment will likely cause her to

5

decompensate, and because she has not shown that she has lived in a highly supportive environment for a year or more, or that she is unable to function outside of such an environment.  (Comm'r Br. 3-8).

In her Reply Brief, Plaintiff argues that her Brief does not ask the court to reweigh the evidence, but that she "requests that this Court [sic] properly review the substantial evidence of record and then apply the facts to the law as detailed under listing § 12.04." (Reply 1) (emphasis added by the court).  She also complains that the arguments presented in the Commissioner's Brief rely upon reasoning that was not presented in the ALJ's decision, and that the court may not rely upon such reasoning.  (Reply 2) (citing SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943); Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).

### A.    The ALJ's Findings

At step two, the ALJ found that Plaintiff has severe impairments including bipolar disorder.  (R. 882).  At step three he determined that none of Plaintiff's impairments or the combination thereof meet or medically equal the severity of any impairment in the Listing of Impairments.  Id. at 882-84.  In reaching that determination, he concluded that with regard to the Paragraph B criteria, Plaintiff "has no more than moderate difficulties" in maintaining concentration, persistence, or pace, and that she "has experienced no episodes of decompensation, which have been of extended duration."  (R. 883).

He explained that Plaintiff's activities, including personal care, care of her husband, four children, and pets, driving her children to school, cleaning around the

house, running errands, doing laundry, mowing the lawn, shopping, bowling, attending church, and attending group counseling, require such a degree of concentration, persistence, or pace that would preclude a finding that she has more than moderate difficulties in this area of functioning.  Id.  He also acknowledged Plaintiff's argument at the hearing that her suicide attempts and psychiatric hospitalizations constituted episodes of decompensation which have been of extended duration.  But, he explained that none of these events lasted at least two weeks and consequently they did not meet the regulatory definition of "extended duration."  Id.

Finally, he found that the Paragraph C criteria of Listing 12.04 are not met because the evidence fails to establish either:

> 1) repeated episodes of decompensation, each of extended duration; 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3) current history of one or more years' inability to function outside a highly supportive living environment, with an indication of continued need for such an arrangement.

(R. 883-84).

## B. Legal Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling.  20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if

claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the Listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"  Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).  The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  Yuckert, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 12.04 applies to all affective disorders, and is characterized by disturbance of mood.  20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.04.  That Listing is met when the criteria of both Paragraph A and B are satisfied, or when the criteria of Paragraph C are

8

satisfied.  Id.  As relevant here, the criteria are:  Paragraph A -- "Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes."  Id. § 12.04(A)(3).  Paragraph B -- both of the following,

"3.  Marked difficulties in maintaining concentration, persistence, or pace;" and

"4.  Repeated episodes of decompensation, each of extended duration."  Id. § 12.04(B).

Paragraph C -- "one of the following:

    1.  Repeated episodes of decompensation, each of extended duration; or

    2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Id. § 12.04(C).

### C.    Analysis

As a preliminary matter, the court agrees with the Commissioner that Plaintiff's argument regarding Listing 12.04 is little more than a request that the court reweigh the evidence and apply the facts to reach an outcome more favorable to Plaintiff.  Plaintiff's argument in her Reply Brief, that she wants the court to review the substantial evidence of record and apply the facts to the law as detailed under listing 12.04, simply clarifies that she wants the court to reweigh the evidence and substitute its judgment for that of the ALJ in this case, and reveals her misunderstanding of the court's role in judicial review of a decision of the Commissioner.

Applying the facts to the law embodied in Listing 12.04 (or vice versa) is quintessentially the duty of the agency decisionmaker--the ALJ in this case.  The court's duty in judicial review is to determine whether the ALJ, in fact, applied the correct legal standard, and if so, to determine whether substantial record evidence supports the factual findings made by the ALJ.  Lax, 489 F.3d at 1084; accord, White, 287 F.3d at 905. Therefore, the question before this court is two-fold, whether the ALJ applied the correct law at step three, and whether substantial record evidence supports the ALJ's finding that Plaintiff's condition does not meet the criteria of Listing 12.04.  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.  The fact that there may also be evidence which could support a finding contrary to that of the ALJ is of no consequence in the court's review.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though [it] would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and brackets omitted, brackets added); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620-21 (1966) ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence," and "it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency").

10

Despite the Commissioner's contrary argument, there can be no serious doubt the ALJ found that Plaintiff's condition meets the Paragraph A criteria of Listing 12.04. He specifically found that she has bipolar disorder as one of her severe impairments. (R. 882). He considered whether the criteria of Listing 12.04 were met or equaled, and in that discussion the decision contains no hint that the Paragraph (A)(3) criteria (bipolar syndrome) were not met. Id. 882-84. But, the ALJ specifically found that neither the Paragraph B criteria nor the Paragraph C criteria of that Listing are met in this case.

With regard to concentration, persistence, or pace, Plaintiff points to record evidence suggesting that her concentration is limited, and that she has difficulty in maintaining attention and concentration, and she points to evidence that her ability to perform the activities relied upon by the ALJ is limited. But, the ALJ considered the evidence on which Plaintiff relies and acknowledged that she has limitations in attention, concentration, persistence, and pace. Moreover, the evidence to which Plaintiff appeals does not compel the conclusion that her limitations in this area are greater than moderate, nor does it preclude the ALJ's finding that her limitations in this area are no more than moderate. Despite that Plaintiff has limitations in the activities upon which the ALJ relied, she does, in fact, perform those activities, and as the ALJ noted, "each of these activities requires a certain degree of concentration, persistence, or pace." (R. 883). Plaintiff has shown no error in the ALJ's finding that she has no more than moderate difficulties in maintaining concentration, persistence, or pace. That finding alone is sufficient to confirm that the ALJ did not err in his Paragraph B determination.

11

Nonetheless, Plaintiff claims that she also meets the Paragraph C criteria of the Listing, and in that context the court will address her argument that she has experienced repeated episodes of decompensation, each of extended duration.

Plaintiff points to eight inpatient hospitalizations with suicidal ideation or attempts related to her mental impairments and occurring between her alleged onset on March 19, 2001 and the date of the ALJ decision on June 26, 2013. (Pl. Br. 29). She acknowledges the ALJ's finding that her decompensations were not of extended duration, but argues that he neglected to consider that an episode of decompensation is not limited to the days of hospitalization but "begins with an exacerbation of signs and symptoms . . . prior to admission to the hospital," and ends "when the claimant is stabilized" which frequently occurred in her case at some point after her release from the hospital. (Pl. Br. 29-30) (Explaining that it is "reasonable to assume" that one such "episode of decompensation" lasted from the beginning of one hospitalization in June 2012, and lasted through the end of a second hospitalization in July 2012.) Plaintiff's argument ignores the ALJ's discussion and the regulations, and again asks the court to reweigh the evidence.

The ALJ explained his consideration of Plaintiff's argument regarding episodes of decompensation, each of extended duration:

> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. Although the claimant has been hospitalized on several occasions for her mental health symptoms, none of these hospitalizations constitute an episode of decompensation of extended duration. During the hearing in April 2013, the claimant's representative argued the claimant's mental health condition meets listing 12.04 due to episodes of decompensation of

12

> extended duration.  Specifically, the representative cited eight
> hospitalizations in the last ten years as episodes of decompensation that
> lasted between three and seven days in duration (Exhibits l0F/29; 13F/4;
> 28F/16, 29; 37F/2; 40F/2; 44F; and 47F).  The claimant's representative
> further contended that any suicide attempt constitutes an episode of
> decompensation of extended duration.  Finally, the claimant's
> representative argued the claimant is in a chronic state of decompensation.
> However, the regulations define repeated episodes of decompensation of
> extended duration as three episodes within one year, or an average of once
> every four months, each lasting for at least two weeks (Listing 12.00(C)(4)).
> The purported episodes of decompensation of extended duration do not
> satisfy this definition.  Specifically, the claimant's longest cited inpatient
> mental health hospitalization was for a period of seven days.  Therefore,
> none of these cited episodes constitute an episode of decompensation of
> extended duration.  Accordingly, the record does not contain repeated
> episodes (three in one year or an average of one every four months) of
> decompensation of extended duration.

(R. 883).  Again, Plaintiff shows no error in the ALJ's explanation.  The regulations

support the ALJ's understanding both that individual episodes of decompensation must

occur, on average, three times a year (not eight in ten years) and that they must last at

least two weeks (not hospitalizations of seven days or less).  She does not argue that the

ALJ's understanding is wrong.

Rather, she argues that an episode of decompensation includes more than the

period of hospitalization, and that her episodes of decompensation were therefore of

extended duration.  Even if it were true that an episode includes more than the period of

hospitalization, Plaintiff's argument does not account for the failure to meet the frequency

requirement--an average of three episodes a year.  Moreover, Plaintiff's contention is not

correct.  The regulations explain:

> Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).  Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(C)(4).  Even assuming that Plaintiff's episodes of decompensation began before her hospitalization in each instance, it is <u>not</u> reasonable simply to assume that she was in a decompensated, suicidal state for a week, or even several days, <u>before</u> she was admitted to the hospital, and Plaintiff points to no record evidence to support such an assumption.  Moreover, in each instance of hospitalization Plaintiff was released to return to her home immediately after her hospitalization; she was not sent to a halfway house, or to a highly structured and directing household.  Plaintiff points to no record evidence that her episodes of decompensation continued after her hospitalization, and the court will not make an allegedly "reasonable assumption" in favor of Plaintiff and in contravention of the ALJ's specific analysis of the evidence and the law.

With regard to the remainder of the Paragraph C criteria, Plaintiff argues that "the ALJ's analysis is woefully inadequate and is not supported by the substantial evidence of record."  (Pl. Br. 31).  Here, the ALJ listed the Paragraph C criteria and stated his finding that "the evidence fails to establish the presence of the 'paragraph C' criteria of listing 12.04."  (R. 884).  The court is unaware of what more must be done.  Plaintiff points to

14

evidence showing:  a "long history of a chronic affective disorder," a work history

showing only short periods of employment, a record of hospitalizations, support by her

in-laws, and difficulties in coping, and argues that her "ability to manage normal life

stressors and minimal mental demands is significantly compromised," and that the ALJ

"erred by failing to make such a finding but further erred by failing to provide any

meaningful analysis."  (Pl. Br. 32-33).  Plaintiff does not explain how any of the evidence

cited compels a finding that her condition meets the Paragraph C criteria of Listing 12.04.

It is Plaintiff's burden at step three to show that her condition meets the criteria of the

Listing, and she has not shown evidence that "even a minimal increase in mental demands

or change in environment would be predicted to cause [her] to decompensate," or an

"inability to function outside a highly supportive living arrangement.  20 C.F.R., Pt. 404,

Subpt. P, App. 1 § 12.04(C)(2 & 3).  She has not met her burden, and the court may not

reweigh the evidence and substitute its judgment for that of the Commissioner.

## III.    Medical Opinions

Plaintiff claims that the ALJ's decision is not based on substantial evidence

because he failed to analyze or weigh Dr. Swearngin's opinion.  (Pl. Br. 34).  She claims

that he impermissibly picked and chose those parts of Dr. Matzeder's opinion favorable to

his finding of nondisability and merely assumed that Dr. Matzeder's opinion would be

different if she had all of the relevant information.  Id. at 35.  She claims error in the

alleged failure of the ALJ to "clearly articulate his rationale as it related to the factors

found at [20] C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)."[1]  Id.  Finally, Plaintiff claims it was error for the ALJ to treat inconsistently the medical opinions "provided by similarly situated medical providers," such as Dr. Matzeder and Dr. Miles.  Id. 35-36.

The Commissioner argues that the ALJ appropriately considered Dr. Swearngin's opinion and that he did not selectively rely on the medical opinions.  She argues that he appropriately considered Dr. Matzeder's opinion and that substantial evidence supports his conclusions both that Dr. Matzeder was unaware of Plaintiff's treatment noncompliance, and that Plaintiff's functioning improved with compliance.  She argues that he properly explained the weight accorded to the opinions of Dr. Schulman and Dr. Witt, and properly considered Dr. Miles's opinion.

## A.    Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources[2] that reflect judgments about the nature and severity of [a

---

[1]The regulations cited were renumbered in February 2012, a year before the ALJ's decision in this case, and the regulatory factors for weighing medical opinions (to which Plaintiff apparently refers) are located at 20 C.F.R. §§ 404.1527(c)(1-6), 416.927(c)(1-6).

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and,

unless a treating source opinion is given controlling weight, all medical opinions will be

evaluated by the Commissioner in accordance with factors contained in the regulations.

Id. §§ 404.1527(c), 416.927(c) (effective March 26, 2012); SSR 96-5p, West's Soc. Sec.

Reporting Serv., Rulings 123-24 (Supp. 2015).  A physician or psychologist who has

treated a patient frequently over an extended period of time (a treating source) is expected

to have greater insight into the patient's medical condition, and his opinion is generally

entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

But, "the opinion of an examining physician [(a nontreating source)] who only saw the

claimant once is not entitled to the sort of deferential treatment accorded to a treating

physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir.

1995)).  However, opinions of nontreating sources are generally given more weight than

the opinions of nonexamining sources who have merely reviewed the medical record.

Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d

1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir.

1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v.

Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

17

inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2015) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see

18

also <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v.</u>

<u>Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court

will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is]

'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight.'" <u>Oldham v.</u>

<u>Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting <u>Watkins</u>, 350 F.3d at 1300).

After considering the factors, the ALJ must give reasons in the decision for the

weight he gives an opinion.  <u>Id.</u> 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion

completely, he must then give 'specific, legitimate reasons' for doing so."  <u>Id.</u>  (citing

<u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d

508, 513 (10th Cir. 1987)).

Recognizing the reality that an increasing number of claimants have their medical

care provided by health care providers who are not "acceptable medical sources"--nurse

practitioners, physician's assistants, social workers, and therapists, the Commissioner

promulgated Social Security Ruling (SSR) 06-3p.  West's Soc. Sec. Reporting Serv.,

Rulings 327-34 (Supp. 2015).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis
> on containing medical costs, medical sources who are not "acceptable
> medical sources," such as nurse practitioners, physician assistants, and
> licensed clinical social workers, have increasingly assumed a greater
> percentage of the treatment and evaluation functions previously handled
> primarily by physicians and psychologists.  Opinions from these medical
> sources, who are not technically deemed "acceptable medical sources"
> under our rules, are important and should be evaluated on key issues such as

impairment severity and functional effects, along with the other relevant
evidence in the file.

Id. Rulings, 330-31.

SSR 06-3p explains that such opinions will be evaluated using the same regulatory
factors used for evaluating medical opinions; id. at 331-32 (citing 20 C.F.R. §§ 404.1527,
416.927); and explains that the ALJ "generally should explain the weight given to
opinions from these 'other sources,' or otherwise ensure that the discussion of the
evidence in the . . . decision allows a claimant or subsequent reviewer to follow the
adjudicator's reasoning, when such opinions may have an effect on the outcome of the
case." Id. at 333.

## B.    The ALJ's Evaluation

The ALJ specifically summarized and evaluated the medical opinions of seven
acceptable medical sources; Dr. Swearngin, Dr. Schlosberg, Dr. Miles, Dr. Witt, Dr.
Matzeder, Dr. Schulman, and Dr. Hunter.  (R. 886-89).  He also evaluated the "other
medical source" opinions of two licensed clinical social workers; Mr. Schroeder and Mr.
Peters.  (R. 886).  The ALJ accorded "very little weight" to the opinions of Mr. Schroeder
and Mr. Peters because the are not "acceptable medical sources" and because they "failed
to take into account the claimant's lack of compliance with recommended treatment and
medication."  Id.

The ALJ next discussed Dr. Swearngin's opinion and noted five reasons to
discount it:  Plaintiff admitted she was (1) non-compliant with treatment and

(2) medication, and (3) had poor motivation to work.  Dr. Swearngin's notations

regarding Plaintiff's "ability to perform work-related skills" (4) relate to plaintiff's

subjective reports, and (5) Dr. Swearngin did not assess specific work-related limitations.

(R. 886-87).  The ALJ noted Dr. Schlosberg's opinion that Plaintiff meets the criteria for

attention-deficit hyperactivity disorder, and stated that he had accommodated that

disorder by limiting Plaintiff to simple unskilled work of SVP (specific vocational

preparation) 2 or less.  (R. 887).  The ALJ discussed Dr. Miles's opinion, and noted five

reasons for according that opinion "very little weight."  (R. 887-88).  He noted that Dr.

Miles's opinion was based on a single interaction with Plaintiff and was inconsistent with

both Plaintiff's activities of daily living and the medical evidence as a whole.  And, he

noted that Dr. Miles did not take into consideration Plaintiff's non-compliance with

medication and treatment and appears to have based her limitations on Plaintiff's

condition when not undergoing treatment or taking medication.  (R. 887-88).  The ALJ

summarized Dr. Witt's evaluation of the record evidence regarding Plaintiff's limitations

He found that Dr. Witt's opinion is "mostly consistent" with the record but that it was

given only "partial weight" because Dr. Witt did not have the benefit of examining

Plaintiff.  (R. 888).  He explained that he gave "little weight" to Dr. Witt's opinion that

Plaintiff should have minimal interaction with co-workers because it was inconsistent

with objective evaluations in the record, particularly Dr. Matzeder's opinion that Plaintiff

could interact well with others in an employment setting."  Id.

The ALJ next summarized and discussed Dr. Matzeder's opinion.  (R. 888-89).
He found her opinions "mostly consistent with the totality of the evidence," and accorded
them "significant weight."  Id. at 889.  But, he found that Dr. Matzeder did not consider
Plaintiff's non-compliance with treatment and medication.  Id.  On that basis, he accorded
"very little weight" to Dr. Matzeder's opinion that Plaintiff has poor judgment and
problem solving skills because Plaintiff's judgment and problem solving skills "would
improve significantly with treatment and medication compliance as demonstrated by the
improvement in her condition with treatment compliance or when she restarts her
medication in the hospital."  Id. (emphasis added).  The ALJ considered Dr. Schulman's
opinion, found it "somewhat consistent with the weight of the evidence," and accorded it
"some weight."  (R. 889).  He noted that Dr. Schulman did not have the benefit of
interacting with Plaintiff, and accorded "very little weight" to Dr. Schulman's opinion
that Plaintiff would have difficulty working in close proximity to others because that
opinion is inconsistent with Dr. Matzeder's opinion, and Dr. Matzeder had personally
evaluated Plaintiff.  Id.  The ALJ summarized Dr. Hunter's evaluation and opinion and
accorded his findings "little weight" because the results of the Minnesota Multiphasic
Personality Inventory-2-RF (MMPI-2-RF) administered by Dr. Hunter were admittedly
invalid and because Dr. Hunter's findings were inconsistent with Plaintiff's
contemporaneous treatment notes.  Id. at 890.  Finally, the ALJ noted that the record
contains "some low global assessment of functioning (GAF) scores."  Id. at 891.  He

discussed the record evidence regarding Plaintiff's non-compliance with medication and treatment, and concluded his discussion of GAF scores:

> The medical record indicates the claimant's mental health symptoms are exacerbated by her non-compliance with medication and that her condition improves with treatment and medication compliance. Accordingly, several of the [GAF] assessments have been discounted due to the claimant's admitted non-compliance with treatment and medication, which exacerbates her symptoms and exaggerates her limitations.

Id.

### C.    Analysis

While it is technically correct that the ALJ failed to state specifically that he had accorded a particular amount of weight (little weight, some weight, significant weight, etc.) to Dr. Swearngin's medical opinion, it is not correct to suggest that he did not analyze or weigh the opinion. As noted above, he analyzed Dr. Swearngin's opinion in a rather extensive paragraph, and articulated five reasons to discount the opinion. (R. 886-87). Plaintiff argues that Dr. Swearngin opined that Plaintiff needed job skills training, and assessed a GAF score of 50 which indicates serious symptoms in occupational functioning, and she implies that the ALJ did not accord sufficient weight to these opinions. (Pl. Br. 34). However, the ALJ specifically acknowledged Dr. Swearngin's opinion that Plaintiff "would benefit from some assistance with job skills training," and that she had assessed a GAF score of 50. (R. 886) (citing Ex. 6F/9). As the ALJ found, Dr. Swearngin did not assess specific work-related limitations, and Plaintiff does not point to limitations which are compelled by Dr. Swearngin's opinion. Moreover, as the

Commissioner points out, a GAF score of 50 does not necessarily indicate serious symptoms in occupational functioning as suggested by Plaintiff.  Rather, a GAF score of 50 indicates "Serious symptoms . . . OR any serious impairment in <u>social, occupational, or school functioning</u>."  Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) 34 (4th ed. text revision 2000) (bolding omitted, underline added).  Serious symptoms <u>or</u> any serious impairment in social, occupational, or school functioning as indicated by Dr. Swearngin's GAF score of 50 do not <u>require</u> finding serious symptoms in occupational functioning, because a score of 50 may reflect problems in social or school functioning, or symptoms not related to the ability to perform basic work activities.  <u>Eden v. Barnhart</u>, 109 Fed. App'x 311, 314 (10th Cir. 2004) (GAF score of 50 may not relate to an ability to perform basic work activities).  While it would have been better had the ALJ stated specifically that he had accorded a particular amount of weight to Dr. Swearngin's medical opinion, he explained his analysis of the opinion, and Plaintiff has shown no error in that analysis.

Plaintiff's argument with regard to the ALJ's evaluation of Dr. Matzeder's opinion fares no better.  Her argument that Dr. Matzeder's GAF score of 50 demonstrates serious impairment in her personal and occupational functioning fails for the reasons just noted, and the ALJ explained his analysis of the reasons for according "significant weight" to most of Dr. Matzeder's opinion while according "very little weight" to her opinion that Plaintiff has poor judgment and problem solving skills.  Plaintiff argues that the ALJ

24

impermissibly picked and chose from Dr. Matzeder's opinion those parts favorable to a finding of nondisability.  This is not that case.

As Plaintiff's Brief suggests, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012) (quoting Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004)); see also, Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008) (same).  Nor may he "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  Chapo v. Astrue, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007); see also Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004) ("ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability"); Robinson, 366 F.3d at 1083 ("ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability").  The salient feature of all these cases is that an ALJ's decision is to be based upon all of the record evidence.  He may not ignore evidence which is contrary to his decision.  And, he may not search through an uncontradicted medical opinion and exclude those portions contrary to his decision.

That is not what happened here.  Dr. Matzeder's opinion was not uncontradicted, and the ALJ explained what in the record was contrary to that opinion.  He did not ignore

the portion of Dr. Matzeder's opinion which is contrary to his decision.  He addressed it

and explained why he discounted it.  That is his duty as an adjudicator.

In a final four-sentence paragraph, Plaintiff argues that the ALJ failed to articulate

his rationale with respect to the regulatory factors for weighing medical opinions, and

improperly treated the opinions of similarly situated medical providers differently with

regard to certain factors.  As previously noted, the court will not insist on a factor-by-

factor analysis of the medical opinions so long as the "ALJ's decision [is] 'sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight.'" Oldham, 509 F.3d at

1258 (quoting Watkins, 350 F.3d at 1300).  The ALJ did so here, and more is not

required.  Finally, an ALJ is not required to treat each relevant factor identically in every

situation.  As Plaintiff complains, the ALJ discounted Dr. Miles's opinion, in part,

because it was based on a single interaction with Plaintiff, but gave "significant weight"

to Dr. Matzeder's opinion even though she had only a single interaction with Plaintiff.

Nonetheless, when one considers the entirety of the ALJ's analyses of the two opinions,

the difference in treatment is explained.  The ALJ discounted Dr. Miles's opinion, in part,

because it was based on a single interaction with Plaintiff, and he provided four additional

reasons to discount the opinion:  it was inconsistent with Plaintiff's activities of daily

living and with the medical evidence as a whole, Dr. Miles did not take into consideration

Plaintiff's non-compliance with medication and treatment, and Dr. Miles appeared to

have based her limitations on Plaintiff's condition when not undergoing treatment or

taking medication.  Each of the four additional reasons is based on the kind of analysis one might expect from a doctor who had only a single contact with the patient.  Thus, in Dr. Miles's case the fact of a single interaction is relevant to the ALJ's determination to discount the opinion.  On the other hand, the ALJ found Dr. Matzeder's opinions were "mostly consistent with the totality of the evidence."  Therefore, the fact that she had only one interaction with Plaintiff did not appear to detract from the opinions she reached.  It was not error for the ALJ to evaluate each medical source's opinion individually.  In fact, it would be error to arbitrarily assign each regulatory factor the same weight every time it was relevant, without considering the weight that should be assigned that factor based upon the specific situation.

Plaintiff has shown no error in the evaluation of the medical source opinions.

## IV.  Step Four:  Past Relevant Work as a Housekeeper

In her final argument, Plaintiff claims the ALJ erred in finding that her work as a housekeeper qualified as "past relevant work."  The Commissioner points out that the ALJ made an alternative step five finding that Plaintiff can perform other work in the national economy, and that any error at step four is immaterial.

It appears that Plaintiff is correct.  As Plaintiff argues, the record seems to indicate that she has never worked at the level of substantial gainful activity.  Since work must be performed at the level of substantial gainful activity to qualify as past relevant work, Plaintiff can have no past relevant work.  Therefore, the ALJ's step four finding that Plaintiff can perform past relevant work as a housekeeper is erroneous.  However, the

Commissioner is also correct.  The ALJ made an alternative step five finding that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform."  (R. 894).  Plaintiff has not even suggested that the ALJ erred at step five.  Therefore, as the Commissioner points out the step four error is harmless.  Plaintiff has shown no error requiring remand in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 26th  day of October 2015, at Kansas City, Kansas.


s:/ John W. Lungstrum      
**John W. Lungstrum**
**United States District Judge**